UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ANDREW J. PHILLIPS-ADDIS,

        Petitioner,                Case No. 1:19-cv-905

v.                                          Honorable Paul L. Maloney

LES PARISH,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual allegations**

Petitioner Andrew J. Phillips-Addis is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee County, Michigan. Petitioner pleaded guilty in the Delta County Circuit Court to assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84. On November 6, 2017, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 8 to 20 years.

On October 24, 2019, Petitioner filed his initial habeas corpus petition. On November 7, 2019, he filed his first amended petition raising four grounds for relief, as follows:

I. A person pleading guilty to a crime not committed is an error in the plea taking process.

II. [Petitioner] should have been allowed to withdraw his plea where his attorney was constitutionally ineffective when he failed to review the video and interview Nathan Gartland[, the victim,] to testify before advising [Petitioner] on whether to withdraw his plea.

III. Petitioner is being held in the Michigan Department of Corrections unlawfully by [a] name [that is] not his.

IV. The Delta County Circuit Court did not have jurisdiction.

(Am. Pet., ECF No. 3, PageID.36, 40.)

Petitioner's rambling amended petition and the attached exhibits disclose the following facts. On July 27, 2017, Petitioner was housed in the Delta County Jail. The victim, Nathan Gartland, was housed there as well. Gartland was laying on his back on seats by a table. Petitioner walked over to him with a towel, placed the towel around Gartland's neck, pulled Garland to the ground, and dragged Garland by the towel to the door. The incident was captured

2

on camera. Petitioner acknowledged at his plea hearing that he "wrapped a towel around Nathan Gartland's neck, tried to kill him." (*Id.*, PageID.82.)

Petitioner entered a *nolo contendere* plea to the charge. But, after he entered his plea and before he was sentenced, he claimed that he and Gartland staged the entire assault. Petitioner staged the assault to avoid extradition to Wisconsin. The staged assault "was to force the state of Michigan justice system [to] stop [Petitioner from] going back to Wisconsin state prison system." (Am. Pet., ECF No. 3, PageID.35.) The entire "crime" was "actually [a] fraud on Michigan state and Wisconsin States justice system." (*Id.*) The goal was to "force[] Delta County [to] make him . . . stay in the state of Michigan." (*Id.*)

After Petitioner's plea, however, he disclosed the plot to the court and prosecutor by way of a letter. Petitioner's disclosures in the letter forced the court, the prosecutor, and Petitioner's counsel, to reconsider further proceedings in the case. The prosecutor "gave [Petitioner] a chance to withdraw the false case and . . . drop [the] false charges, but then [Petitioner] would . . . lose his discharge from [the] Wisconsin case . . . ." (*Id.*, PageID.39.) Petitioner could not abide that result because his "life was at risk in Wisconsin state [prison] system, due [to] gang [problems.]" (*Id.*)

Petitioner's counsel knew that Petitioner was hoping to get at least a five-year sentence in Michigan because Petitioner felt that with a sentence that long, Wisconsin would drop its hold on him. (*Id.*, PageID.57, 67.) After Petitioner disclosed the fraud, he informed his counsel that he wanted to go forward with sentencing anyway. (*Id.*, PageID.65-66.) In Petitioner's letter(s) to the court and prosecutor, he disclosed additional crimes, in addition to the fraud he had perpetrated on the court. (*Id.*, PageID.68-70.) Counsel advised Petitioner that, should Petitioner

3

withdraw his plea in the pending case, he might face a potential life sentence because of his criminal history; and, in addition, he might face prosecution for perjury. (*Id*.)

Counsel offered to withdraw:

> I was a little concerned that I felt as an attorney that if it was true, that it was all a concoction, then the service that I had rendered in good faith were utilized to defraud the Court, I didn't feel that that was a very fair bargain and I think that would kind of destroy the normal relationship between an attorney and client.

(*Id*., PageID.70.) Counsel explained how he responded to the information that Petitioner and Gartland had made up the crime:

> I don't actually recall verbatim the conversation that I had with [Petitioner] after learning that it was an alleged concoction. I think my view a little bit of it is it's really not my job to determine guilt or innocence of my client, but to present the relative strengths and weaknesses of any particular course of action. So I don't know at that time I was overzealous about examining whether or not he actually did concoct it. I was talking to him—I think the summation of my conversations with him was more about the implications of various courses of action.

(*Id*., PageID.72.) Counsel acknowledged that he had seen the video recording of the assault; but, he did not review it after Petitioner disclosed the concoction or interview Gartland to confirm Petitioner's story. (*Id*., PageID.72-76.) Because counsel believed Petitioner wanted to go forward with sentencing—and Petitioner's representations in his habeas submissions support that belief—Petitioner went forward with the sentencing. But, "after sentencing was done and Wisconsin started [their] end of letting [Petitioner be] discharged . . . [, Petitioner] wanted to back out [of] the state of Michigan deals . . . ." (*Id*.) Indeed, he hoped to "gain money out [of] the dealings of the fraud." (*Id*.) He secured the appointment of appellate counsel.

Appellate counsel moved to withdraw Petitioner's plea. The trial court held a hearing, and rejected Petitioner's claim. The court ruled that the plea proceeding itself was error free. (*Id*., PageID.93.) Counsel had done nothing wrong up to and including the plea proceeding. (*Id*.) The trial court found further "that [Petitioner's counsel's] performance was at or above an

4

objective standard of reasonableness under prevailing professional norms and there [was] no reasonable probability that an error was committed for the Court to conclude that the results of the proceedings would have been different." (*Id*., PageID.94.) Petitioner, with the assistance of appellate counsel, filed an application for leave to appeal, raising the first two of the issues identified above. By order entered September 25, 2018, the court of appeals denied leave "for lack of merit. . . ." *People v. Phillips-Addis*, No. 345803 (Mich. Ct. App. Sept. 25, 2018), http://publicdocs.courts.mi.gov/coa/public/orders/2018/345083(8)_order.pdf.

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered March 5, 2019, concluding that the questions presented should not be reviewed. *People v. Phillips-Addis*, No. 158693 (Mich. Mar. 5, 2019, http://publicdocs.courts.mi.gov/sct/public/orders/158693_14_01.pdf.

Petitioner was angling to get a Michigan sentence to avoid imprisonment in Wisconsin because he had gang-related problems in the Wisconsin prison system. Now, Petitioner has run into similar problems in the Michigan prison system. (Am. Pet., ECF No. 3, PageID.55-56, 125.) Because he is "innocent," he wants out of prison. Petitioner "wants [to] pull out of his contract of such a plot." (Am. Pet., ECF No. 3, PageID.39.)

## II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

5

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

6

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Discussion

#### A. Actual innocence

Petitioner's claim of actual innocence fails to state a cognizable federal claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in *dicta*: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief

7

might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Moreover, the only evidentiary support for Petitioner's claim of innocence is his statement that he is innocent. That statement stands contradicted in the record by his admission at the plea hearing that he is not innocent.

### B. Plea withdrawal

Petitioner claims that he should have been permitted to withdraw his guilty plea. A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95

(6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

### C. Ineffective assistance of counsel

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Conversely, "[i]t is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F.2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v.*

*Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Petitioner's challenge does not implicate any of those grounds for invalidating his plea.

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that

11

coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel

12

satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner claims his counsel was ineffective, not for any failure prior to Petitioner's plea and not for advising Petitioner to take the plea, but for failing to advise Petitioner to withdraw his plea prior to sentencing. The trial court concluded counsel was not ineffective and denied the motion to withdraw the plea. The Michigan Court of Appeals also rejected Petitioner's claim for lack of merit. The document excerpts Petitioner has provided support the Michigan courts' determinations of his claim.

The record excerpts indicate that counsel considered Petitioner's post-plea claim that he was innocent because the purported assault was staged, and advised Petitioner that pursuing plea withdrawal for that reason might subject him to other penalties. By insisting on his innocence, Petitioner would provide the foundation for a perjury claim based on his prior sworn statement that he intended to harm and even kill Gartland. Moreover, Petitioner does not challenge counsel's advice that Petitioner might face life imprisonment if he withdrew his plea.

When Petitioner's appellate counsel moved to withdraw the plea, he offered two grounds: first, Petitioner was innocent; and second, Petitioner's trial counsel was constitutionally ineffective for not moving to withdraw the plea. If Petitioner's counsel had moved to withdraw the plea, he could have argued only the first ground. The trial court and the court of appeals rejected that ground; therefore, even if Petitioner's trial counsel were ineffective for failing to file the motion to withdraw plea, Petitioner cannot show prejudice because the result would have been

13

the same. The failure of the first ground necessarily defeats the second ground because it forecloses a finding of prejudice on the ineffective assistance claim.

Moreover, the trial court's determination on the first prong of *Strickland*—that trial counsel's advice was professionally reasonable—is entirely consistent with, not contrary to, *Strickland*. Counsel advised Petitioner what might happen if Petitioner stood by his claim that the assault was staged and what might happen if Petitioner just went forward with the sentencing. Petitioner does not claim that counsel misrepresented the respective consequences of Petitioner's choices, nor does Petitioner dispute that he chose to go forward with the sentencing. Petitioner fails to explain how counsel's advice was professionally unreasonable. Petitioner claims counsel should have looked at the video again or interviewed Petitioner's co-conspirator. But, as trial counsel testified, it did not really matter if the assault was staged or not because there were difficult consequences for Petitioner no matter how Petitioner chose to proceed.

Petitioner argues to this court that his counsel, the prosecutor, and the court were all participants in Petitioner's attempt to perpetrate a fraud. He is simply wrong. Petitioner acknowledges that the prosecutor offered him an out, but Petitioner declined it because he did not want to risk ending up in Wisconsin. Petitioner's counsel likewise offered Petitioner a choice and, at the time, Petitioner chose to go forward with sentencing, likely for the same reason. The court did nothing more than accept Petitioner's choice. Only Petitioner (and perhaps Gartland) were active participants in Petitioner's fraud.

Petitioner has failed to demonstrate that his plea is unknowing or involuntary. He has failed to show that the state courts' determinations that Petitioner's plea was not rendered invalid by ineffective assistance of counsel is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on his claim.

14

### D. Name change

Petitioner was convicted and sentenced as Andrew J. Phillips-Addis, apparently at his request. Now, however, he insists that his name is Andrew J. Addis and, thus, he cannot be incarcerated under the other name. This appears to be part and parcel of Petitioner's scheme. He did not raise it in the trial court or the Michigan Court of Appeals.[1]

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Petitioner has never fairly presented the "wrong name" issue to the trial court or the court of appeals. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

Petitioner is not entitled to habeas relief on his "wrong name" claim. He admits that he is the person who dragged Gartland by a towel around his neck, entered a plea of guilty, and was sentenced for that crime. This not a case of mistaken identity. Moreover, Petitioner acknowledges that he is at least complicit in providing the name of Andrew J. Phillips-Addis to the Delta County Circuit Court. To the extent there is any constitutional error buried within Petitioner's "wrong name" claim, that error was harmless.

---

[1] Petitioner did not submit his application for leave to appeal in the Michigan Supreme Court; therefore, the Court cannot determine whether he raised the issue in the supreme court.

For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam). Under the circumstances presented here, Petitioner has failed to show any prejudice resulting from his conviction under the "wrong name."

### E. Subject matter jurisdiction

Petitioner's amended petition makes passing reference to a claim that the trial court did not have jurisdiction over him. (Am. Pet., ECF No. 3, PageID.40.) Petitioner did not raise this challenge in the state courts. For the reasons stated above, because the claim is not exhausted, the Court cannot grant relief; but, the Court can deny relief.

The claim is, at best, muddled. It appears to flow from either his "wrong name" claim or some claim that he should not have been in the Delta County Jail in the first instance. Petitioner, however, does not contest that the crime to which he entered his plea occurred in the Delta County Jail.

"Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending *and is not dependent on the particular facts of the case*." *People v Lown*, 794 N.W.2d 9, 23 (2011) (quotation marks and citations omitted). "Michigan

16

circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id.* A circuit court plainly has subject matter jurisdiction to hear and try felony criminal cases. Const 1963, art 6, §§ 1 and 13; Mich. Comp. Laws § 600.151; Mich. Comp. Laws § 600.601; Mich. Comp. Laws § 767.1; *Lown*, at 268.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Petitioner offers no basis to challenge the state court's subject matter jurisdiction over his criminal prosecution and no basis to conclude that his challenge to subject-matter jurisdiction might rise to the level of a federal constitutional violation. Petitioner has failed to show that the state court's conduct of his criminal prosecution is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner has failed to show that he is entitled to habeas relief based on his claim of some jurisdictional defect.

## IV.     **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons that the Court concludes Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  January 14, 2020                     /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge